UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL J. WELLS,<br>                       Plaintiff,<br>    v.<br>ISABELLA GUZMAN, Administrator<br>of the Small Business Administration of<br>the United States,[1]<br>                       Defendant. | Case No. 3:19-cv-00407-MMD-CLB<br><br>ORDER |

**I.   SUMMARY**

Plaintiff Michael Wells brings this action relating to a contractual dispute involving the United States Small Business Administration (the "SBA"). (ECF No. 1.) Defendant Isabella Guzman, in her official capacity as Administrator of the SBA, has moved to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1), or in the alternative for summary judgment. (ECF No. 33 ("Motion").)[2] Because the Court finds that a state-law challenge to the debt collection process under 31 U.S.C. § 3720D may be preempted by the Debt Collection Improvement Act of 1996 ("DCIA"), 31 U.S.C. § 3701, *et seq.*, but that summary judgment is not warranted—as further discussed below—Defendant's Motion is granted in part and denied in part. The Court further grants Plaintiff leave to amend his complaint.

///

///

---

[1] In his complaint, Plaintiff asserts claims against Chris Pilkerton in his official capacity as the Acting Administrator of the United States Small Business Administration. (ECF No. 1.) However, Isabella Guzman is the current Administrator and is thus the proper Defendant. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

[2] The Court has additionally reviewed the parties' corresponding response and reply. (ECF Nos. 37, 41.)

## II. BACKGROUND

The following facts are undisputed unless stated otherwise. On December 28, 2007, the Nevada State Development Corporation—serving as a lender—made a loan to Frontier Fun Center, Inc. (ECF No. 33 at 2.) The named borrower on the note was Main Street Galleria, LLC. (*Id.*) Plaintiff Michael Wells later became an investor and LLC manager of Main Street Galleria, LLC. (*Id.*)

On January 2, 2009, Plaintiff signed and entered into an unconditional guarantee ("UG" or "Form Number 148") with the SBA. (*Id.*) Section 6 of the UG was entitled "rights, notices, and defenses that the Guarantor waives." (ECF No. 1 at 19.) It stated that "to the extent permitted by law," Plaintiff waived certain rights, notices, and defenses, and proceeded to specifically list those waivers. (*Id.*) Sometime between February 1, 2010, and April 30, 2010, default on the note occurred. (ECF No. 33 at 2.) On March 1, 2010, the SBA honored its guarantee and purchased the loan. (*Id.*)

Thereafter on December 21, 2010, Umpqua Bank executed a notice of default and election to sell ("Notice of Default") Plaintiff's property. (*Id.*; *see also* ECF No. 33-1 at 4.)[3] The property was subsequently sold, a notice of sale was recorded, and a copy was sent to "the then owner of the property hereinafter described and to all other parties entitled by law to such notice[.]" (ECF No. 33-1 at 4-5.)[4]

On March 4, 2014, the SBA referred the loan to the United States Department of the Treasury ("Treasury") to enforce collection through the Treasury Offset Program. (ECF No. 33 at 3.) The following day, the Treasury sent Plaintiff a notice of unpaid delinquent debt. (*Id.*) Plaintiff disputed this debt. (*Id.*) The Treasury eventually referred

---

[3]Relevant to this order, the Court notes that Defendant included with her Motion an attached exhibit evidencing that Umpqua Bank executed a Notice of Default on December 21, 2010, and that it was sent by certified mail to the property owners and all other parties entitled by law. (*See* ECF No. 33-1.)

[4]Plaintiff appears to dispute that he received notice at this time. Plaintiff states in his response that his "complaint specifically avers that the first notice which was received by [Plaintiff] which indicated that things had gone awry came not from the SBA, but from the U.S. Treasury, which on or about March 5, 2014, sent Plaintiff a notice of unpaid delinquent debt which had been referred to them by the SBA." (ECF No. 37 at 10 (internal quotes omitted).)

the debt to Performat Recovery, Inc., and later Plaintiff received a collection notice from the CBE Group, both are private collection companies. (*Id.*) The CBE Group sent Plaintiff an administrative wage garnishment notice. (*Id.*) As a result, Plaintiff requested a hearing and raised eight objections to the garnishment. (ECF Nos. 33 at 3, 37-1 at 3.)

On September 26, 2017, the Administrative Wage Hearing Officer of the SBA ("SBA Hearing Officer") issued its Garnishment Hearing Decision ("Decision"). (ECF No. 37-1.) The Decision, in summarizing the procedures to date, noted the SBA had "received [Plaintiff's] request for an appeal of the SBA's intent to initiate administrative wage garnishment" and Plaintiff "dispute[s] the existence and amount of the debt and the right of the SBA to initiate administrative wage garnishment." (*Id.* at 2.) Nevertheless, the Decision ordered 15% of Plaintiff's disposable pay from his wages at the time be withheld and declared that this was "the final decision for the purposes of judicial review under the Administrative Procedure Act (5 U.S.C. 701 et seq.). For further appeals, the proper avenue for reconsideration of administrative wage garnishment rulings is through judicial review in the federal district court." (*Id.* at 6-7.)

Plaintiff filed his complaint in this Court on July 18, 2019. (ECF No. 1.) He alleges the following claims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) equitable subrogation, (4) procedural due process, and (5) declaratory relief/judgment.[5] (*Id.* at 5-9.) Relevant to this order, Plaintiff alleges "the SBA improperly referred the loan to the Treasury." (*Id.* at 3.) He further alleges that his "[o]bjections to the collection of a purportedly delinquent debt (owed to the SBA) through wage garnishment actions were lodged by [his] counsel via correspondence on July 19, 2017, and September 7, 2017." (*Id.* at 4.) And that a "common theme" to his objections regarding "the debt at issue and collection tactics" within the Decision, was his waiver of common notice requirements, etc. in signing the UG. (*Id.* at 5.)

///

---

[5]Plaintiff also alleges a claim for injunctive relief. (ECF No. 1 at 9.) The Court, however, previously dismissed this "claim" as a standalone claim. (*See* ECF No. 17.)

## III. DISCUSSION

Defendant's Motion seeks to dismiss Plaintiff's claims for lack of subject matter jurisdiction and, alternatively, seeks summary judgment in Defendant's favor. Specifically, Defendant argues that Plaintiff's claims should be dismissed because (1) the DCIA bars Plaintiff's claims and (2) Plaintiff's claims were not exhausted, and that Defendant is entitled to summary judgment because (3) Plaintiff's claims are timed barred under Nevada's statute of limitations and (4) non-party Umpqua Bank caused damages to Plaintiff, not the SBA. (ECF No. 33 5-8.) The Court agrees in part with Defendant and will discuss her arguments in turn, but will grant Plaintiff leave to amend.

### A. Debt Collection Improvement Act of 1996 ("DCIA")

Defendant argues that Plaintiff's claims are barred by the DCIA because Congress intended to utilize a single federal scheme to regulate debt collection by federal agencies "notwithstanding any provision of State law." (ECF No. 33 at 5-7 (quoting 31 U.S.C. § 3720D(a)).[6]) Because the SBA ordered the garnishment of Plaintiff's wages, Defendant further argues that Plaintiff is prohibited from challenging the debt under state law in this action. (*Id.* at 7.) Plaintiff counters that his complaint attacks the UG thus he is "attacking the very process itself," whereas the DCIA concerns debt already delinquent and the collection of the delinquent debt. (ECF No. 37 at 3-8.) Additionally, Plaintiff counters that the DCIA has never been used to "challenge the application of federal common law (of the forum state) to personal guarantees." (*Id.* at 8.) Because it remains unclear to the Court if Plaintiff is lodging a state-law challenge to the collection process, the Court agrees in part with Defendant.

"The Debt Collection Improvement Act provides the relevant statutory and regulatory standards for the Government's debt-collection efforts." *Confederated Tribes*

---

[6]"*Notwithstanding any provision of State law*, the head of an executive, judicial, or legislative agency that administers a program that gives rise to a delinquent nontax debt owed to the United States by an individual may in accordance with this section garnish the disposable pay of the individual to collect the amount owed, if the individual is not currently making required repayment in accordance with any agreement between the agency head and the individual." 31 U.S.C. § 3720D(a) (emphasis added).

*& Bands of the Yakama Nation v. United States*, 89 Fed. Cl. 589, 606 (2009). As a general mater, the DCIA "requires that debt-collection efforts be initiated by the head of the agency from whose activities the debt arose[.]" *Id.* The DCIA "authorizes federal agencies to use administrative wage garnishment to collect outstanding debts '[n]otwithstanding any provision of State law.'" *Frew v. Van Ru Credit Corp.*, Case No. 05-5297, 2006 WL 2261624, *3 (E.D. Pa. Aug. 7, 2006 (quoting 31 U.S.C. §3720D(a))). "[T]he DCIA language preempts 'those provisions of state law that would otherwise prohibit or hinder the ability of a guaranty to garnish a debtor's wages.'" *Id.* (quoting *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1125 (11th Cir. 2004)).

In his complaint, Plaintiff alleges that "the SBA improperly referred the loan to the Treasury for Enforced Collection through the Treasury Offset Program." (ECF No. 1 at 3.) On May 7, 2014, the Treasury referred Plaintiff's alleged debt to Performant Recovery, Inc., for further enforcement and collection. (*Id.*) Nearly a year later, Plaintiff received a collection notice from CBE Group. (*Id.*) Plaintiff alleges that his "[o]bjections to the collection of a purportedly delinquent debt (owed to the SBA) through wage garnishment actions were lodged by [his] counsel via correspondence on July 19, 2017, and September 7, 2017." (*Id.* at 4.) Plaintiff further alleges that a "common theme" to his objections regarding "the debt at issue and *collection tactics*" within the Decision was his waiver of common notice requirements—and other rights—in signing the UG. (*Id.* at 5 (emphasis added).) Moreover, in the Decision, the SBA Hearing Officer noted the following: "On or about July 23, 2015, we received your request for an appeal on the SBA's intent to initiate administrative wage garnishment. In your request, you dispute the existence and amount of the debt *and the right of the SBA to initiate administrative wage garnishment*." (*Id.* at 12 (emphasis added).)

Plaintiff acknowledges § 3720D of the DCIA was written to preempt the application of state law concerning garnishment by the Treasury. (ECF No. 37 at 6.) But based on his allegations and the SBA Hearing Officer's summary of Plaintiff's appeal of the wage garnishment, to the extent Plaintiff's claims are characterized as a state-law challenge to

the collection of the delinquent debt by the Treasury, the Court may not have jurisdiction pursuant to § 3720D. The Court agrees with Defendant, in part, in that if Plaintiff is seeking to bring a state-law challenge regarding the Treasury's efforts to collect on the debt owed, the DCIA preempts conflicting state-law challenges. *See* 31 U.S.C. § 3720(D)(a); *see also Frew*, 2006 WL 2261624 at *3 (finding that state law in question was preempted by § 3720D of the DCIA); *United States v. S.C. Dep't of Corr.*, Case No. 3-04-22066-MJP, 2006 WL 8446769, *11 (D.S.C. June 14, 2006) (finding that a state law prohibiting the type of garnishment set forth in the DCIA was expressly preempted by § 3720D(a)).

However, Plaintiff's complaint includes allegations that appear to, in part challenge the UG he signed and entered into with the SBA. (ECF No. 1 at 3-4.)[7] As Plaintiff puts it, he is "attacking the unconditional guarantee" and "the very process itself" as the "language in the guarantee waived practically every known consumer protection which Nevada law could afford its residents[.]" (ECF No. 37 at 4.) While Plaintiff states the "[d]elinquent debt being collected by the Treasury is largely irrelevant to this suit," (*Id.* at 5), it is not clear to the Court, as discussed above, if Plaintiff state-law challenges conflict with the DCIA. Nor is it clear to the Court if Plaintiff is even seeking to assert a state-law challenge to the debt collection process by the Treasury, which could be preempted by the DCIA. As such, the Court will grant Plaintiff leave to amend his complaint.

**B.   Exhaustion**

Defendant appears to argue that Plaintiff failed to exhaust his administrative remedies with respect to his state law claims and additionally fails to assert federal-law challenges regarding the Decision in this action. (ECF No. 33 at 8 n.6.) Plaintiff counters that the Decision expressly states it was a "final agency decision for purposes of judicial review under the Administrative Procedure Act." (ECF No. 37 at 12-13.) Based on how

---

[7]But the allegations specific to Plaintiff's claims appear to be related to the collection of the underlying debt and the Treasury's collection process. (ECF No. 1 at 6 (stating in support of the breach of contract claim that "the SBA breached the agreement by, among other things and as aforesaid, failing to timely provide notice of default and demand in the manner delineated in the Deed of Trust and failing to act in any type of commercially reasonable manner pertaining to its collection efforts under the SBA loan Unconditional Guarantee.").)

6

the Decision was represented to him, Plaintiff further counters that failure to exhaust administrative remedies is not an available defense to the SBA. (*Id.* at 13.) In her reply, Defendant points out the Decision was only final as to the claims Plaintiff asserted, and Plaintiff's response failed to discuss the specific claims raised during the administrative proceedings. (ECF No. 41 at 4-5.) The Court finds Defendant's argument unconvincing.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." *McKart v. United States*, 395 U.S. 185, 193 (1969). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quotation and emphasis omitted). "As a general rule, [courts] will not consider issues not presented before an administrative proceeding at the appropriate time*." Marathon Oil Co. v. United States*, 807 F.2d 759, 767-68 (9th Cir. 1986). "However, [courts] have repeatedly held that the exhaustion requirement should be interpreted broadly." *Nat'l Parks & Conservation Ass'n v. BLM*, 606 F.3d 1058, 1065 (9th Cir. 2010). Plaintiffs fulfill the requirement if their appeal "provided sufficient notice to the [agency] to afford it the opportunity to rectify the violations that the plaintiffs alleged." *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 899 (9th Cir. 2002). Plaintiffs do not need to state their claims in precise legal terms, rather, plaintiffs need only to raise an issue "with sufficient clarity to allow the decision maker to understand the rule on the issue raised, but there is no bright-line standard as to when this requirement has been met." *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 968 (9th Cir. 2006) (internal quotations omitted).

Here, Plaintiff made eight objections to the collection of the delinquent debt owed to the SBA through wage garnishment. (ECF No. 37-1 at 3.) Seven of those objections are as follows:

> 1)   The SBA purchased the loan from its participating Certified Development Company, Nevada State Development Corporation, without notifying [Plaintiff].

      2)     The SBA formalized a Liquidation Plan without notifying [Plaintiff].
      3)     The SBA did not provide [Plaintiff] with notice of default.
      4)     Had [Plaintiff] been given notice of default, [Plaintiff believes he] could have saved the business.
      5)     The SBA charged the loan off and made demand for payment in full without notifying [Plaintiff].
      6)     The SBA did not diligently pursue the other guarantors, specifically Jaffra Masad, allowing the guarantors to dissipate their assets in the process.
      7)     The SBA did not obtain an appraisal of the property.

(*Id.*) On September 26, 2017, the SBA Hearing Officer issued the Decision, which expressly states: "This is the final agency decision for purposes of judicial review under the Administrative Procedure Act (5 U.S.C. 701 et seq.). For further appeals, the proper avenue for reconsideration of administrative wage garnishment rulings I through judicial review in the federal district court." (*Id.* at 7.)

Plaintiff's seven objections stated above mirror his four claims in this action— breach of contract, breach of the implied covenant of good faith and fair dealing, equitable subrogation, and procedural due process. In fact, Defendant acknowledges this when she states in her Motion that Plaintiff "raised administrative challenges that are *similar* to those asserted [in this action]—except he based his administrative claims on federal rather than state law." (ECF No. 33 at 6-7 (emphasis added).) Although Plaintiff did not use precise legal terms, and in interpreting the exhaustion requirement broadly, the Court finds that Plaintiff had raised his claims with sufficient clarity to provide notice to the SBA of his claims so that the agency could rectify the violation. Plaintiff now alleges the same claims in this action and therefore exhausted his administrative remedies upon receiving the "final agency decision" from the SBA.

As to Defendant's contention that Plaintiff failed to assert federal-law challenges regarding the Decision as part of this Court's Administrative Procedure Act review, the Court's prior order found "no reason why state law may not serve as the applicable federal common law in this case under *Kimbell Foods* and *Frazier*." (ECF No. 17 at 10.) *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979); *Great Sw. Life Ins. Co. v.*

*Frazier*, 860 F.2d 896 (9th Cir. 1988). As such, the Court finds that Plaintiff has properly exhausted his claims and has not failed to assert federal-law challenges to the Decision in this action.

### C.     Statute of Limitations

Defendant argues Plaintiff's claims are timed barred under Nevada's statute of limitation with respect to contracts and should thus be dismissed pursuant to Rule 12(b)(1).[8] (ECF No. 33 at 7.) Specifically, Defendant argues Plaintiff should have been aware of his claims when his property was foreclosed and sold in 2011, and yet he failed to assert his claims until 2019, when he filed this action. (*Id.*) Plaintiff counters that Defendant does not offer any evidence to support this contention and that there is a dispute of material fact. (ECF No. 37 at 8.) Plaintiff additionally counters the discovery rule applies to his contract action because the statutory period of limitation was tolled until he discovered, or should have discovered, the facts giving rise to this action. (*Id.* at 9-10.) According to Plaintiff, he did not have notice until the Treasury sent him notice about the unpaid delinquent debt on March 5, 2014. (*Id.* at 10.) The Court disagrees with Defendant.

Under Nevada law, an action based upon a written contract must be brought within six years. *See* NRS § 11.190(1)(b). The exact date in which a statute of limitations begins to accrue is usually a question of fact and courts may determine that date as a matter of law only when the uncontroverted evidence irrefutably demonstrates the accrual date.

---

[8]Defendant's Motion specifically raises this argument citing to Fed. R. Civ. P. 12(b)(1). (ECF No. 33 at 7.) However, a statute of limitations defense is more appropriate pursuant to Fed. R. Civ. P. 12(b)(6). *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (articulating that a claim may be dismissed under Rule 12(b)(6) "on the ground that it is barred by the applicable statute of limitations . . . ."); *Aldrich v. NCAA*, 484 F. Supp. 3d 779, 796-98 (N.D. Cal. 2020) (citation omitted) ("A statute of limitations defense can require dismissal under Rule 12(b)(6) if it is apparent from the face of the complaint that the claims are time-barred.")

Additionally, "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Here, Defendant included with her Motion an exhibit evidencing that Umpqua Bank executed a Notice of Default on December 21, 2010. (*See* ECF No. 33-1 at 4.) As such, the Court construes this argument under a summary judgment standard pursuant to Fed. R. Civ. P. 56. The Court notes that in her reply, Defendant states that she is entitled to summary judgment because Plaintiff's claims are time barred. (ECF No. 41 at 6.)

9

*See Winn v. Sunrise Hosp. & Med. Ctr.*, 277 P.3d 458, 458, 462-63 (Nev. 2012). "The general rule concerning statutes of limitations is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought*." Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990). The Nevada Supreme Court, however, has provided an exception to the general rule—referred to as the "discovery rule"—under which "the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Id.*

While Plaintiff asserts Defendant did not offer evidence to support her contention that the statute of limitations began to accrue with notice of the 2011 foreclosure, the Court disagrees as Defendant's Motion expressly states that "on December 21, 2010, the Umpqua Bank executed a Notice of Default and Election to Sell Plaintiff's property" and Defendant cites to an attached exhibit in support. (ECF No. 33 at 2.) The exhibit is a recorded document—dated December 22, 2011—affirming Defendant's proposition and further states that "on March 31, 2010, a copy of said Notice of Default and Election to Sell was mailed by certified mail to the then owner of the property hereinafter described and to all other parties entitled by law to such notice[.]" (ECF No. 33-1 at 4.) Nevertheless, the Court finds the recorded document offered by Defendant does not irrefutably demonstrates the accrual date.

Although the recorded document is expressly clear the Notice of Default was mailed to the property owner and other parties—which presumably would have included Plaintiff—the document does not offer evidence that Plaintiff received actual notice but rather that the Notice of Default was likely mailed to Plaintiff. Moreover, Plaintiff's complaint states the "first notice" Plaintiff received of the unpaid delinquent debt was on March 5, 2014. (ECF No. 1 at 3.) As such, and in viewing all facts and drawing inferences in the light most favorable to Plaintiff, Defendant has not met her burden showing there are no genuine issues of material fact as to when Plaintiff had notice of the facts giving rise to his contract claim. The Court thus need not address the discovery rule in this instance as the Court finds that Defendant is not entitled to summary judgment.

### D. Umpqua Bank

Defendant appears to argue she is entitled to summary judgment because non-party Umpqua Bank—not the SBA—foreclosed on Plaintiff's property, therefore the SBA did not cause the damages to Plaintiff. (ECF No. 33 at 8.) Plaintiff counters that Defendant has not proffered evidence to support this argument as to the role of Umpqua Bank, or the Bank's effect on Plaintiff's claims. (ECF No. 37 at 11.) The Court agrees with Plaintiff.

Plaintiff's complaint does not mention Umpqua Bank nor alleges any facts against the Bank. (*See generally* ECF No. 1.) Rather, Plaintiff alleges that he entered an unconditional guarantee with the SBA via standard Form Number 148. (ECF No. 1 at 2-3.) As a result of the SBA's breach of the parties' agreement, Plaintiff suffered damages. (*Id.* at 6.) It is not clear to the Court exactly what Defendant is arguing and the relevance of Umpqua Bank. Defendant has offered no evidence or case law to support her argument but a mere reference to Fed. R. Civ. P. 56(a) to conclude that she is entitled to summary judgment. (ECF No. 33 at 8.) Without more, Defendant has not demonstrated that she is entitled to summary judgment.

## IV. LEAVE TO AMEND

The Court has discretion to grant leave to amend and should freely do so "when justice so requires." *Allen*, 911 F.2d at 373 (*quoting* Fed. R. Civ. P. 15(a)). Because the Court finds that Plaintiff may be barred from a state-law challenge to the Treasury's debt collection process and because it is not clear if Plaintiff is even bringing such a challenge, Plaintiff is granted leave to amend his complaint. Plaintiff will have 30 days from the date of this order to file an amended complaint.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

///

1  It is therefore ordered that Defendant Isabella Guzman's motion to dismiss, and in the alternative, motion for summary judgment (ECF No. 33) is granted in part and denied in part. Pursuant to 31 U.S.C. § 3720D, any state law challenge by Plaintiff Michael Wells to the United States Department of the Treasury's debt collection process is preempted if it conflicts with the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, *et seq.*

It is further ordered that Wells will have 30 days from the date of this order to file an amended complaint. Failure to file an amended complaint will result in dismissal of this action.

The Clerk of Court is directed to substitute Chris Pilkerton with Isabella Guzman pursuant to Fed. R. Civ. P. 25(d).

DATED THIS 28th Day of September 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE